# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

     vs.                               CR No. 12-061-ML

RALPH M. MARIANO

## MEMORANDUM AND ORDER

Pending before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. #164) ("Motion") filed by Petitioner Ralph M. Mariano ("Petitioner" or "Mariano"). The Government has filed an opposition to the Motion (Doc. #167) ("Opposition"), to which Mariano filed a response (Doc. #169) ("Response"). No hearing is necessary.

<u>FACTUAL BACKGROUND AND TRAVEL</u>

Mariano was arrested on February 7, 2011, pursuant to a Criminal Complaint (Doc. #3) charging him with bribery, in violation of 18 U.S.C. § 201. On April 26, 2012, a Grand Jury sitting in the District of Rhode Island returned a 37-count Indictment (Doc. #27) against Mariano and his father, charging Mariano with conspiracy, theft of government property, wire fraud, bribery, extortion under color of official right, and tax evasion, in violation of 18 U.S.C. §§ 371, 641 and 2, 1343 and 2, 201 and 2, 1951 and 2, and 26 U.S.C. § 7201, respectively. Mariano was arraigned on May 8, 2012. Subsequently, the Grand Jury returned a 41-count Superceding Indictment (Doc. #43), containing the same charges against Mariano, but adding a defendant, Mary O'Rourke. Mariano was arraigned on the Superceding Indictment on July 9, 2012.

Following negotiations between the Government and defense counsel, Mariano appeared before the Court on May 30, 2013, and, pursuant to a written Plea Agreement (Doc. #88), pled guilty to three counts of the Superseding Indictment: conspiracy, theft of government property, and tax evasion. The Government agreed to dismiss the remaining counts. Mariano was sentenced on November 1, 2013, to concurrent sentences of 60 months, 120 months, and 60 months incarceration, to be followed by a term of supervised release of three years. He was also ordered to pay a mandatory special assessment of $300, a $10,000 fine, and restitution in the amount of $17,957,000. Judgment (Doc. #134) ("D.R.I. Judgment") entered that same day.

Mariano appealed his sentence to the Court of Appeals for the First Circuit, arguing that the Court erred in determining that he was not entitled to a reduction in his offense level for acceptance of responsibility. The First Circuit affirmed the sentence in a Judgment (Doc. #162) ("First Circuit Judgment") dated October 9, 2014. The Court of Appeals' Mandate (Doc. #163) issued on October 31, 2014. On February 23, 2015, the United States Supreme Court denied *certiorari*.

Mariano filed the instant Motion, and memorandum in support thereof ("Mariano Mem."), on February 23, 2016. He alleges ineffective assistance of both plea and sentencing counsel.

## DISCUSSION

I.    Section 2255 and AEDPA

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, a constitutional error, or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185 (1979)("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.")(internal quotation marks omitted).

Section 2255 states that:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which "imposed significant new constraints on proceedings under section 2255." Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008)(footnote omitted). "Some of these constraints were temporal; for example, AEDPA established a one-year statute of limitations for filing a section 2255 petition." Id. (citing 28 U.S.C. § 2255(f)). Others were numerical, requiring a petitioner to obtain preclearance from the circuit court before filing a second or successive petition. Id. (citing 28 U.S. § 2255(h)).

II.    Strickland

A defendant who claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel must demonstrate:

(1)    that his counsel's performance fell below an objective standard of reasonableness; and

(2)    a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010)(same). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the

identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690); see also Strickland, 466 U.S. at 689 (noting that the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ..."). To show prejudice under Strickland, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. In making the prejudice assessment, the court focuses on the "fundamental fairness of the proceeding." Manon, 608 F.3d at 131; see also Strickland, 466 U.S. at 696. "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 106 (D.P.R. 2000)("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

The same principles apply in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Hill Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla v. Kentucky, 559 U.S. 356, 371 n.12 (2010)("In Hill, the Court recognized–for the first time–that Strickland applies to advice respecting a guilty plea."). The first prong of the Strickland test is nothing more than a restatement of the standard of attorney competence described above. Hill, 474 U.S. at 58.

The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 59 ; see also Lafler v. Cooper, 566 U.S. at 156, 163 (2012)("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); id. at 164 ("In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Missouri v. Frye, 566 U.S. 133, 147 (2012). The Hill Court reiterated that, as stated in Strickland, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ...." 474 U.S. at 59-60; see also Padilla, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

III.    Analysis

    A.    Ineffective assistance of plea counsel

Mariano claims that his plea counsel, Robert C. Corrente, was ineffective based on his failure to: (1) investigate prior to giving advice regarding a plea offer; (2) give proper advice in rejecting

the initial plea offer; and (3) challenge the Government's case in any meaningful way. Motion at 4-6. Mariano argues that, "but for counsel's ineffective assistance, there was a reasonable probability that a different result would have occurred." Motion at 4; see also id. at 5-6.

In order to put Mariano's allegations in perspective, some additional background information is needed. In December, 2011, and again in March, 2012, an initial plea offer was made by the Government, under which Mariano would admit to one count of theft of government property of more than $2.5 million and one count of tax evasion of more than $200,000. Mariano Mem. at 15;[1] see also id., Ex. A (Letter from Assistant United States Attorney to Attorney Corrente dated March 27, 2012 ("3/27/12 Letter")) at 2 (summarizing terms of proposed plea offer). Mariano states that he "was told by Attorney Corrente that he would likely receive a three (3) point reduction for acceptance of responsibility and on the low end, if accepted by the court he would be looking at approximately 55 months to serve." Mariano Mem. at 15. However, Mariano further states, "Attorney Corrente advised Petitioner to reject the aforementioned deal as 'he didn't know what to tell [him] to plead to.'" Id. at 16 (alteration in original). At that time, Mariano's three co-defendants had pled guilty "and were being spared harsh sentences for their cooperation against Petitioner." Id.

Subsequent to Mariano's rejection of this initial offer, the Grand Jury on April 26, 2012, returned an Indictment which added charges of conspiracy, wire fraud, and extortion under color of official right against Mariano. Indictment at 1. The 3/27/12 Letter had warned of this possibility. 3/27/12 Letter at 2 ("This offer was conveyed to you with the understanding that in the event your client rejected the offer, he could be charged by way of indictment with more serious criminal violations."). The Superceding Indictment followed on June 21, 2012. See Superceding Indictment.

---

[1] Page citations are to the pagination of the electronic docket.

As noted above, Mariano ultimately pled guilty to three counts of the Superceding Indictment. <u>See</u>

<u>Plea Agreement</u>.

> Mariano argues that:
>
> Petitioner received ineffective assistance of counsel as Attorney Corrente never discharged his professional obligation to explain the plea and the consequences of rejecting the plea. Prior to advising Petitioner to reject the plea Attorney Corrente failed to conduct an objectively reasonable pre-trial investigation of both the facts and the law in relation to the charges and potential charges that the Petitioner was facing. Attorney Corrente's reliance upon an untested and un-researched legal theory regarding the sourcing of the money received by the Petitioner was objectively unreasonable. Moreover Attorney Corrente never properly explained and/or counseled Petition[er] as to the potential risks attendant to proceeding to trial. Attorney Corrente was not sufficiently informed with respect to the legal and factual issues relating to Petitioner's case so that he could give Petitioner sufficient advice so that Petitioner could have made a knowing and informed decision as to whether to accept or reject the Government's initial plea offer. Had Petitioner been given competent advice at the time that the original plea was offered, he would have accepted the initial plea agreement. Due to ineffective assistance of counsel he was not able to make an informed decision and the deal was rejected.

Mariano Mem. at 14; <u>see also</u> <u>id.</u> at 16 ("This first plea did not have Petitioner admitting to the more

serious charges in the criminal complaint. The plea deal dealt with the receipt of money which he

had admitted to from the beginning."). Seventeen months later, Mariano states, counsel advised him

"to take a worse plea on the eve of trial as he realized he had 'oversold the sale.'" <u>Id.</u> at 19; <u>see also</u>

<u>id.</u> at 14 ("In the end, Attorney Corrente would tell Petitioner he needed to plea[d] because he

(Corrente) had 'oversold the sale' and alleged that Petitioner was in danger of being convicted.").

Mariano concludes that "Attorney Corrente's poor judgment altered the outcome in that, had

Petitioner been properly informed as to the likelihood of his exposure to more serious charges in an

indictment as well as the likelihood of success or not at trial, the Petitioner would have taken the

initial plea deal." <u>Id.</u> at 31. Further, "the sentence he received by having to accept the second plea

deal which included more charges carrying more serious penalties is evidence of prejudice satisfying

the second prong of Strickland." Id.

The Government counters that:

> [I]t cannot be said that Corrente's recommendation to reject the initial plea offer somehow failed to meet an objective standard of reasonableness. In March 2012, the case against Mariano was still at an early stage. The Grand Jury had yet to return an indictment and only a small portion of the discovery had been produced. It was eminently reasonable for Corrente to advise Mariano to hold off on entering a plea of guilty until he had the discovery available and could form a reasoned opinion of the evidence the Government had against Mariano. As Mariano points out, Corrente was working hard on Mariano's behalf on several arguments that could have mitigated Mariano's guilt, including an argument that some of the Navy money received by Mariano was insufficiently controlled by the Government to constitute "government funds" under 18 U.S.C. § 641. While the Government disagrees with this assertion, Attorney Corrente's decision to pursue this issue was not unreasonable, but rather a function of his zealous advocacy on behalf of his client.

Opposition at 8-9. Further, the Government states, Mariano cannot meet Strickland's prejudice prong:

> Although more than a year passed between the initial plea offer in March 2012 and the change of plea hearing in May 2013, Corrente managed to secure essentially the same plea agreement for Mariano that Mariano rejected in March 2012. The March 2012 offer was for Mariano to plead guilty to a two count Information, charging him with theft of government funds and tax evasion. The May 2013 plea agreement similarly required Mariano to plead guilty to theft of government funds and to tax evasion. While a conspiracy charge was also included in the 2013 plea agreement, that charge had no effect on the Guideline range in this case. Through vigorous representation of his client, Corrente managed to convince the Government to dismiss the bribery and extortion counts, which would have significantly increased Mariano's exposure.

Id. at 9. Thus, the Government concludes, Mariano cannot establish that "the results of the proceedings would have been different but for the alleged errors of his attorney." Id. at 10.

Leaving aside the question of whether counsel's performance was deficient, the Court turns directly to Strickland's prejudice requirement. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by

-8-

the defendant as a result of the alleged deficiencies. ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); <u>Knight v. United States</u>, 37 F.3d 769, 775 (1st Cir. 1994)("Since Knight has not satisfied the second prong of <u>Strickland</u>, we need not address the first prong.").

> To reiterate:
>
> To show prejudice from ineffective assistance where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept, if they had the authority to exercise that discretion .... <u>To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time</u>.

<u>Frye</u>, 566 U.S. at 147 (citation omitted)(emphasis added); <u>see also</u> <u>Lafler</u>, 566 U.S. at 164. "This further showing is of particular importance because a defendant has no right to be offered a plea nor a federal right that the judge accept it." <u>Frye</u>, 566 U.S. at 148 (internal citations omitted).

Mariano's main complaints appear to be that: (1) by rejecting the initial plea offer, he was exposed to more serious charges carrying harsher penalties in the Indictment and Superceding Indictment, <u>see</u> Mariano Mem. at 16-17, 19, 29; <u>see also</u> Mariano Mem., Ex. G (Declaration of Ralph M. Mariano ("Mariano Decl.")) ¶ 48; (2) with the addition of the conspiracy count the amount of money for which he was liable significantly increased as he was now responsible for the money attributed to his co-conspirators, <u>see</u> Mariano Mem. at 16-17, 25; Mariano Decl. ¶ 48; and (3) the prison sentence he eventually received was twice that which would have been imposed under the original plea offer, <u>see</u> Mariano Mem. at 15, 20, 30-31.

The Government's statement that the 2013 plea offer was "essentially the same plea

agreement" as the 2012 offer rejected by Mariano, Opposition at 9, is a bit of an overstatement. Nonetheless, the Government's point has some validity. It is true that, pursuant to the first plea offer, Mariano would have pled guilty to a two-count information alleging theft of government property and tax evasion, 3/27/12 Letter at 2, while under the second plea offer a third charge, conspiracy to commit theft of government property, was part of the agreement, Plea Agreement ¶ 1.a. Although Mariano's allegation that he was "exposed" to additional charges is accurate, Mariano Mem. at 16, 25; see also Indictment; Superceding Indictment, despite that exposure he ultimately pled guilty to just one additional charge under the Plea Agreement, see Plea Agreement ¶ 1.a. The bribery and extortion charges were dismissed as part of the agreement.[2] See Plea Agreement ¶ 2.e. Also under the agreement, the Government agreed that no additional criminal charges would be brought against Mariano. Id. ¶ 2.f. The Government notes that the addition of the conspiracy count had no effect on the Guideline range. Opposition at 9. Moreover, although "any amount of [additional] jail time has Sixth Amendment significance," Lafler, 566 U.S. at 165 (alteration in original), the sentence imposed for the additional charge, conspiracy, five years (the statutory maximum), was less than the sentence imposed for theft of government property, ten years (the statutory maximum). See Opposition, Ex. 4 (Transcript of November 1, 2013, sentencing hearing

---

[2] Mariano asserts that because "[t]his initial plea deal never had bribery and extortion in it," Mariano Mem. at 25, Attorney Corrente's statement that "we advised Mr. Mariano that because the extortion and bribery counts against him carried very severe penalties under the sentencing guidelines, we would attempt to attack those counts, and try to make a deal on some of the lesser counts, which is precisely what we were able to do," id. (quoting id., Ex. H (Affidavit of Robert Clark Corrente, Esq. ("Corrente Aff.")) ¶ 10), is a "complete distortion ...," id.; see also id. at 31("Curiously, Attorney Corrente rewrites history to cover his error when he files an affidavit stating that over the course of the next two years he and his firm worked to get counts that were never in the initial plea deal to begin with out of the second plea deal and tries to call that a success for Petitioner."). But see Opposition at 9 ("Corrente managed to convince the Government to dismiss the bribery and extortion counts, which would have significantly increased Mariano's exposure.").

("Sent. Hrng. Tr.")) at 37. Moreover, the five year sentence for conspiracy was to run concurrently with the sentences Mariano received for the other counts to which he pled guilty. See id.; D.R.I. Judgment at 5. Thus, in terms of Mariano's exposure, the practical effect of forgoing the initial plea offer was not as great as the potential effect Mariano describes.

Relatedly, with respect to the amount of money for which he was responsible under the Plea Agreement, under the first plea offer the agreed upon loss based on the theft of government property charge was more than $2.5 million and the agreed upon loss from the tax evasion count was more than $200,000. Mariano Mem. at 15. The second plea agreement "now included conspiracy and a loss of between $7-$20 million versus the minimum loss of $2.5 million in the initial plea deal ...." Id. at 17. Mariano states that:

> With the plea, Petitioner would admit to a charge encompassing only him and the monetary loss he would plea[d] to would be one category lower than what he ultimately pled to which would have a very material impact on sentencing. Without the conspiracy charge the loss agreed to by the other defendants would not be imputed to him nor would their conduct.

Id. at 16; see also id. at 25. The Government states that "the amount of loss increased by 2 levels after subsequent investigation determined that the loss was greater than $7.5 million, triggering a 20 level enhancement rather than an 18 level enhancement. Other than that one change, Mariano secured the exact plea agreement in 2013 that he claims his counsel was ineffective for rejecting in 2012."[3] Opposition at 10. Although the increase in the agreed upon amount of loss also affected the amount of restitution to be paid, see Sent. Hrng. Tr. at 37, it did not alter the statutory maximum sentence, see Plea Agreement ¶ 6; Sent. Hrng. Tr. at 37, which, as noted above, was half the sentence

---

[3] The total tax loss to which Mariano agreed also increased, to more than $400,000 but not more than $1 million. However, Mariano does not argue that he was prejudiced based on this change.

for theft of government property and was to run concurrently.

While the Court agrees that the increase in amount of loss from more than $2.5 million to more than $7 million is significant, that alone is not enough to demonstrate that the fundamental fairness of the proceeding was undermined.  See Strickland, 466 U.S. at 689; see also Williams v. Taylor, 529 U.S. 362, 391 (2000)(quoting Strickland, 466 U.S. at 694)("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").  Mariano's statement that "at the time of discussion regarding the [initial] plea," Mariano Mem. at 16,  his three co-defendants had pled guilty (or were in the process of doing so) to bribery or conspiracy to commit bribery, id., is telling.  Although he attempts to shift the focus to Attorney Corrente, see id. ("Attorney Corrente knew based on the Information that the government's focus if this went to trial was to parade these co-defendants into court for them to confirm what they had pled to"), surely Mariano was cognizant of the possibility of being linked to them, and, by extension, to additional monies, when he chose to forgo the Government's initial plea offer.

As for Mariano's assertion that "[i]n the end, Petitioner was sentenced to twice the amount of time as he would have received under the initial plea agreement," Mariano Mem. at 20; see also id. at 30 (noting that his "sentence was double what Petitioner could have received if he had accepted the first plea deal"), he is mistaken.  Mariano states that he "was told by Attorney Corrente that he would likely receive a three (3) point reduction for acceptance of responsibility and on the low end, if accepted by the court he would be looking at approximately 55 months to serve."  Id. at 15.  The key phrase in that statement is "if accepted by the court."   The Plea Agreement provides that:

> Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed.  The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations.  The Court is free to impose any sentence it deems

appropriate up to and including the statutory maximum. Defendant also understands that even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty.

Plea Agreement ¶ 11. If Mariano had not rejected the initial offer, once finalized the formal plea agreement would have contained the same, or a substantially similar, paragraph. The Plea Agreement also spelled out the maximum penalties Mariano was facing. Plea Agreement ¶ 6.

Pursuant to the Plea Agreement, the Government agreed to recommend a sentence within the range of sentences for the offense level determined by the Court under the Guidelines. Id. ¶ 2.a. Although the 3/27/12 Letter did not include a specific sentencing recommendation, 3/27/12 Letter at 2, presumably the formalized plea agreement would have included the same, or similar, language regarding the Government's recommendation. While it is true that a disparity in the sentence offered and the sentence received is of concern, see Lafler, 566 U.S. at 165; Mariano Mem. at 30 (citing cases), there is no guarantee that the Court would have agreed to a sentence at the low end of the Guideline range.[4]

In addition, at the May 30, 2013, change of plea hearing, the Court made crystal clear to Mariano the advisory nature of the Guidelines, the statutory maximum sentences he was facing, and the portion of the Plea Agreement quoted above. Opposition, Ex. 2 (Transcript of May 30, 2013, change of plea hearing ("Plea Hrng. Tr.") at 20-22, 26-28. With respect to ¶ 11, the Court stated:

> THE COURT:   Would you skip to paragraph 11. In this paragraph, Mr. Mariano, it says that you understand that the Court alone makes all sentencing decisions, including the application of the guidelines and ultimately what sentence is to be imposed. Do you understand that?

---

[4] Ultimately Mariano's guideline range was 97-121 months imprisonment. Sent. Hrng. Tr. at 19. The Government sought a sentence at the high end of the guideline range, 121 months. Id. at 23. The Court imposed a sentence of 120 months. Id. at 37.

THE DEFENDANT: Yes, your Honor.

THE COURT: It goes on to say that you understand that I am not bound by any of the stipulations you've made with the Government and I am not bound to follow the recommendation that the Government has promised it will make. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In other words, Mr. Mariano, there is absolutely no guarantee here of what sentence you will get. Do you understand that?

Id. at 27. Mariano again stated that he understood and that he still wished to plead guilty. Id. The Court further emphasized:

THE COURT: That paragraph goes on to say that you also understand that if my guideline determination and my sentence is different than any estimate Mr. Corrente may have given you, ultimately it's what I decide that counts and if you are dissatisfied with my guideline calculation or with my sentence, that would not be a reason to give you to withdraw this guilty plea. Do you understand that?

THE DEFENDANT: Yes, your Honor.

Id. at 27-28; see also, e.g., Hervis v. United States, Civil No. 09-cv-158-JD, 2010 WL 411233, at *4 (D.N.H. Jan. 28, 2010)("Hervis's responses at the change of plea hearing demonstrate his understanding of the gravity of his crime and the potential length of the sentence."); id. at *5 (same). Again, had Mariano accepted the initial plea offer, the same kind of exchange would have occurred. Thus, Attorney Corrente's estimate of how much time Mariano would serve was hardly carved in stone, and there was no guarantee that he would have received a sentence at the low end of the guideline range even if he had chosen to accept the initial plea offer.

The statutory maximum sentences for conspiracy, theft of government property, and tax evasion were five, ten, and five years, respectively. See Plea Agreement ¶ 6. As noted previously, while the Guideline range changed two levels with the increase in the amount of monetary loss, see

Opposition at 10, the statutory maximum penalties for the charges to which he would have pled and those to which he did plead did not change. The Court, in fact, imposed the maximum sentence for each count. Sent. Hrng. Tr. at 37. Thus, despite Attorney Corrente's estimate, the possibility that Mariano would have been sentenced to the statutory maximum existed under either the initial plea offer or the ultimate Plea Agreement. Mariano's claim that he would have received a sentence of 55 months to serve is, therefore, pure speculation.

The Court briefly addresses Mariano's other allegations against plea counsel. Mariano states that "Attorney Corrente's investigation prior to advising Petitioner regarding the initial plea deal in large part focused on a novel legal theory regarding the sourcing of the money Petitioner had received ...." Mariano Mem. at 22. Mariano argues that "Attorney Corrente erroneously advised Petitioner to reject the March 2012 plea deal on the basis that the Petitioner had no exposure for the charge of Theft of Government Property based on an untested legal theory regarding the sourcing of the money received by the Petitioner." Id. at 29. That this defense ultimately proved to be unworkable does not inexorably lead to a conclusion that the delay in entering a plea prejudiced Mariano. Rather, it speaks to Attorney Corrente's opinion of the prospects of success at trial at the time the initial offer was rejected. Cf. Frye, 566 U.S. at 150 ("It may be that in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer. For example, revelations between plea offers about the strength of the prosecution's case may make a late decision to plead guilty insufficient to demonstrate, without further evidence, that the defendant would have pleaded guilty to an earlier, more generous plea offer ....").[5]

---

[5] Mariano "points to the affidavit of [Co-defendant] Mary O'Rourke as 'objective' evidence of Petitioner's testimony through his declaration that he would have pled to the first plea deal but for the uninformed and deficient advice of Attorney Corrente ...." Mariano Mem. at 30. However, the affidavit offers little in the way of details, but, rather, states that she was "personally familiar" with Attorney

Lastly, Mariano claims that he was prejudiced because Attorney Corrente "failed to challenge the government's case in any meaningful way." Motion at 6. According to Mariano:

> Had Attorney Corrente filed the appropriate motions during the course of the pre-trial phase and/or had turned over the "red file" to the government to clear up issues as to the authenticity of tampered text message and emails as well as altered funding certificates ... this tampered evidence may not have been used against Petitioner and could have helped with any plea negotiations.

Mariano Mem. at 32;[6] <u>see also</u> <u>id.</u> at 26 ("If Attorney Corrente had exposed the flaws in certain evidence, it might have impacted the Petitioner's final plea and sentencing."). Mariano apparently believes that had Attorney Corrente been more aggressive in his use of this evidence, Mariano would have received a more favorable plea deal. <u>See</u> <u>id.</u> ("Attorney Corrente failed to use this information to help the Petitioner during the plea bargaining phase as others were rewarded for their cooperation."); <u>see also</u> <u>id.</u> ("Petitioner will never know what impact this would have had in any plea negotiations or during sentencing.").

As before, Mariano is engaging in speculation as to what may (or may not) have occurred.

_____

Corrente's representation of Mariano, <u>id.</u>, Ex. L (Affidavit of Mary O'Rourke) ¶ 1, and "participated in dozens of meetings with Attorney Corrente and was copied on hundreds of emails," <u>id.</u> ¶ 2. The one specific statement she confirms is that at the conclusion of the meeting in which the initial plea offer was discussed, Attorney Corrente told Mariano that "he wouldn't know what to have [him] plea[d] to." <u>Id.</u> ¶ 4 (first alteration in original).

　　Mariano additionally observes that objective evidence "can also be found in a significant disparity between the sentence a defendant was offered and the sentence he receives." Mariano Mem. at 30 (internal citation omitted). It is important to note, however, that Mariano is relying on Attorney Corrente's estimate of Mariano's potential sentence here, not a formal sentencing recommendation by the Government, which, as discussed above, may or may not have been accepted by the Court. Moreover, also as discussed previously, the statutory maximum terms of imprisonment for the charges to which Mariano would have pled guilty had he accepted the Government's initial offer and the statutory maximum terms of imprisonment for the charges to which he ultimately pled guilty were the same. If Mariano had received consecutive terms, with the conspiracy charge Mariano's total period of incarceration would have been five years longer; however, again, the Court imposed concurrent sentences for the counts to which Mariano ultimately pled.

　　[6] The "red file" contained the allegedly tampered text messages and emails and altered funding certificates. Mariano Mem. at 13-14.

Clearly Attorney Corrente had determined that the above evidence would be more useful as impeachment evidence on cross-examination at trial.  Id. at 32 ("On his own, Attorney Corrente failed to send this 'red file' over to clear up these issues and said he would deal with them 'on cross.'"); see also id. at 26; id., Ex. J.  Mariano has not demonstrated a reasonable probability that, but for Attorney Corrente's choice of strategy, "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  Frye, 566 U.S. at 147.

As will be discussed further infra, Mariano has not shown both that he would have accepted the Government's initial offer and that the prosecution would not have withdrawn the offer "in light of intervening circumstances" or that the Court would have accepted its terms.  Lafler, 566 U.S. at 164.  In short, Mariano has not demonstrated a reasonable probability that the result of the proceedings would have been different had he not received ineffective assistance of plea counsel.  See Strickland, 466 U.S. at 694; see also Lafler, 566 U.S. at 163-64.  Instead, he offers possibilities, not objectively reasonable probabilities.

The Supreme Court cautioned in Strickland that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  466 U.S. at 689.  Therefore, the court's scrutiny of counsel's performance must be "highly deferential," must avoid "the distorting effects of hindsight,"[7] and must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time."  Id.  Following those principles, this Court cannot find that

_____

[7] The Court notes Mariano's statement that the Motion is not "filed merely in hindsight."  Response at 2.  His arguments and statements in support thereof, however, indicate otherwise.

counsel's performance "affected the outcome of the plea process," Hill, 474 U.S. at 59, in this case that there is a reasonable probability that, but for counsel's allegedly deficient advice, Mariano would have accepted the first plea offer, see id.; see also Mariano Mem. at 31, and was prejudiced by not doing so, Mariano Mem. at 31. Accordingly, because he has failed to demonstrate prejudice, the Court rejects Mariano's claim of ineffective assistance of plea counsel.

B.     Ineffective assistance of sentencing counsel

Mariano further alleges that his sentencing counsel, John L. Calcagni III, failed to properly advise him during the sentencing phase. Mariano's primary argument is that counsel did not warn him about the "potential impact and severe consequences" of sending a complaint to the Department of Justice Office of Professional Responsibility ("OPR") "outlining allegations of prosecutorial misconduct." Mariano Mem. at 27; see also id. at 19-20. Mariano also contends that counsel "failed to leverage the fact that Petitioner had assisted the government by providing information about their key witness, Russell Spencer which enabled the government to charge him with additional crimes for lying to a federal official on multiple occasions." Id. at 28.; see also id. at 18-19. Finally, Mariano claims that counsel "further failed to challenge the amount of loss claimed by the government and failed to argue any mitigation for Petitioner's documented gambling addiction and depression." Id. at 28. Again Mariano claims that had he not received ineffective assistance, "there was a reasonable probability that a different result would have occurred." Motion at 8.

Relevant to Mariano's first contention, the Plea Agreement (Doc. #88) provides that:

2.     Government's Obligations. In exchange for Defendant's plea of guilty:

....

b.     For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of

-18-

responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

    c.    Defendant has timely notified authorities of an intention to enter a plea of guilty. Therefore, if the offense level determined by the Court under the sentencing guidelines is a level 16 or greater, the government will move the sentencing Court for an additional decrease of one level pursuant to U.S.S.G. § 3E1.1(b).

    ....

Plea Agreement ¶ 2.[8]  The Plea Agreement further states that "Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate." Id. ¶ 13.  In addition, as discussed above, Mariano agreed that he understood that: the Court alone makes all sentencing decisions and may impose any sentence it deems appropriate, up to and including the statutory maximum; the Court is not bound by the parties' stipulations, offense level adjustments, or the Government's recommendations; and that even if the Court's sentence differs from the defendant's expectations, the defendant may not withdraw his guilty plea. Id. ¶ 11; see also Plea Hrng. Tr. at 27-28.

---

[8] Section 3E1.1 provides:

(a)  If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b)  If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

U.S.S.G. §3E1.1.

Mariano complains that "[a]t no time did Attorney Calcagni ever advise the Petitioner not to send this complaint or advise him that it might put his plea deal and 3-point sentence reduction in jeopardy."  Mariano Mem. at 27; see also id. at 18.  Ultimately, according to Mariano, "selected excerpts were used against Petitioner in the pre-sentence report by the very prosecutors who were the subject of the complaint.  The government withdrew the 3-point reduction recommendation for acceptance of responsibility, no pre-sentencing hearing was requested and the Petitioner received the maximum sentence under the guidelines."  Id. at 18.

> The Sentencing Guidelines recognize the "legitimate societal interests" in acceptance of responsibility and therefore allow sentencing judges to provide a measure of leniency to those defendants who accept responsibility for their actions.  The Guidelines therefore dispense credit for acceptance of responsibility in two flavors: a two-point reduction at the discretion of the sentencing court if the defendant "clearly demonstrates acceptance of responsibility for his offense."  And, if, in a serious offense, a defendant accepts responsibility at an early stage of the investigation, a defendant may be eligible for an additional one point reduction in the offense level.  This second reduction is available only to defendants who accept responsibility early enough to save the government the time and expense of preparing for trial, and consequently, this further reduction is only available "upon motion of the government."
>
> Defendants are not, however, automatically entitled to even the two-point acceptance of responsibility reduction.  The onus of proving acceptance of responsibility is on the defendant.  To prove acceptance of responsibility, a defendant must truthfully admit or not falsely deny the conduct comprising the conviction, as well as any additional relevant conduct for which he is accountable.

United States v. Garrasteguy, 559 F.3d 34, 38 (1st Cir. 2009)(internal citations omitted); see also United States v. Franky-Ortiz, 230 F.3d 405, 407-08 (1st Cir. 2000)(quoting United States v. Saxena, 229 F.3d 1, 9 (1st Cir. 2000)("The sentencing guidelines prescribe that a defendant's offense level should be trimmed by two levels, and sometimes three, if he accepts responsibility for the offense of conviction.  But a defendant is not automatically entitled to this adjustment.  'Rather, he must demonstrate that he has taken full responsibility for his actions, and he must do so candidly and with

genuine contrition.'")(internal citation omitted); Saxena, 229 F.3d at 9 (noting that a defendant "is not entitled to this adjustment as an inevitable concomitant of a guilty plea").  Moreover, even if the Government had not withdrawn its recommendation that Mariano be awarded an offense level reduction, by the terms of Mariano's plea agreement, the Court was not bound to accept the government's recommendations or, significantly, the parties' agreement as to offense level adjustments.  Plea Agreement ¶ 11.

Mariano, through counsel, objected to the paragraph in the Presentence Investigation Report ("PSR") (Doc. #120) which stated that he "'ha[d] not clearly demonstrated an acceptance of responsibility' to receive a levels decrease pursuant to U.S.S.G. § 3E1.1."  Defendant's Sentencing Mem. (Doc. #124) at 1.   Sentencing counsel also argued during the sentencing hearing that Mariano had met the standard of demonstrating acceptance of responsibility.  Sent. Hrng. Tr. At 12; see also id. at 8-10.  The Court overruled Mariano's objection, finding that Mariano had not met his burden of demonstrating entitlement to a reduction in offense level.  Id. at 17-18.  The Court stated:

> The application notes to 3E1.1 indicate that admission of guilt, that is, the entry of a guilty plea, is not the be-all and end-all of the Court's analysis; and those application notes say that if a Defendant who falsely denies or frivolously contests relevant conduct that the Court determines to be true or has acted in a manner inconsistent with acceptance of responsibility, then that Defendant has not met his burden [to demonstrate entitlement to a reduction in his offense level].

Id. at 17; see also id. ("Mr. Mariano, through counsel, recognizes that, and I think concedes, that it is his burden to demonstrate that he is entitled to a reduction in his offense level pursuant to 3E1.1 and that burden, although not a terribly onerous one, is still resting with him.").  After noting some of Mariano's statements, which Mariano had submitted to the Court, in the OPR documents, id. at 17-18, the Court stated that, rather than accepting responsibility, Mariano had "done just the opposite," id. at 18.

Without the reduction, Mariano's offense level was 30, which resulted in a guideline range of 97-121 months imprisonment.  Id. at 18-19.  The Government recommended a sentence of 121 months.  Id. at 29.  The defense did not suggest a particular sentence, but argued against the Government's sentencing recommendation.  Id. at 29-32.  Mariano expressed remorse for his actions.  Id. at 32-34.  As noted previously, Mariano was sentenced to a term of imprisonment of 120 months on Count II (theft of government property) and concurrent terms of 60 months on Counts I and XXXIV (conspiracy and tax evasion, respectively), followed by three years of supervised release upon his release.  Id. at 37.  These sentences represented the statutory maximum terms of imprisonment, Plea Hrng. Tr. at 21-22, which would have remained the same even if Mariano had been awarded the three-level reduction for acceptance of responsibility.

Mariano appealed his sentence to the First Circuit (despite having waived his right to appeal pursuant to the Plea Agreement, see Plea Agreement ¶ 12).  The Court of Appeals found that Mariano's waiver of his right to appeal was valid.  First Circuit Judgment at 1.  Moreover, the court stated:

> In any event, even if the appeal waiver did not bar this appeal, appellant has not established the existence of an error or abuse of discretion in the district court's conclusion, reasonably made in reliance on appellant's own statements, that appellant failed to demonstrate an entitlement to a reduction in his offense level for the acceptance of responsibility.  See USSG § 3E1.1(a)(in order to qualify for a reduction "a defendant must ... not falsely deny the conduct comprising the conviction, as well as any additional relevant conduct for which he is accountable.").

Id. at 2; see also id. at 1 (noting that Mariano's "claim that the government violated the agreement by failing to recommend a reduction for the acceptance of responsibility is unconvincing; the government's obligation to recommend the reduction was conditional on appellant's continued acceptance of responsibility through sentencing, a condition which the government and the court

reasonably concluded did not occur").

"In the last analysis, actions often speak louder than words." <u>Saxena</u>, 229 F.3d at 10. The <u>Saxena</u> court stated that "[b]ecause the appellant's post-plea activities reasonably could be construed as exhibiting conduct inconsistent with a full and ungrudging acceptance of responsibility, the district court's ruling had a solid foundation." <u>Id.</u> Such is the case here.[9] <u>See</u> First Circuit Judgment at 1; <u>see also</u> <u>United States v. Glaum</u>, 356 F.3d 169, 180 (1st Cir. 2004)("The district court's rejection of an acceptance of responsibility claim is entitled to considerable deference ....").

In light of the foregoing, Mariano's attempt to blame counsel for his own actions is unpersuasive. Whatever prejudice Mariano may have suffered was not due to ineffective assistance of counsel. Mariano overlooks the fact that he, and he alone, made the decision to send the complaint. <u>See</u> Defendant's Sentencing Mem. at 2 n.1 ("Mr. Mariano's OPR complaints were filed on his own."); <u>id.</u> at 7 (noting that complaints "were filed by Mr. Mariano in his individual capacity"). While Mariano faults counsel for failing to advise him of the possible consequences of filing the complaint, Mariano Mem. at 27 (noting that counsel said that "he wanted nothing to do with it" and that "he had to be in front of these people every day"), the terms of the plea agreement should have put him on notice that his statements could prove detrimental to him at sentencing, Plea Agreement ¶¶ 2, 13.[10] Whether or not counsel offered good advice, bad advice, or no advice, ultimately the responsibility for filing the complaint–and any attendant consequences–rests with

_____

[9] The Court notes parenthetically that, in his affidavit, Attorney Corrente stated that "Mr. Mariano complains that after his change of plea hearing, I should have issued a statement to the press proclaiming his innocence." Corrente Aff. ¶ 13. Mr. Corrente thought such a course of action would be unwise, in part because "under the terms of the deal with the government, Mr. Mariano was to receive a three-level credit for acceptance of responsibility at sentencing," and "advised him that any public comment about his involvement should be made <u>after</u> sentencing." <u>Id.</u>

[10] Indeed, Attorney Calcagni's comments should also have raised a red flag.

Mariano.

Mariano next argues that counsel failed to "leverage" his assistance to the Government by providing information regarding Russell Spencer, the Government's key witness, Mariano Mem. at 28, presumably to receive a more lenient sentence. Mariano complains that:

> Petitioner with no prior criminal and who had given information to the government which led to additional criminal charges for the government's star witness Russell Spencer, was not given a single point in reduction in sentencing because his submission to the Department of Justice was deemed to be a demonstration of Petitioner not accepting responsibility for his actions.

Id. at 32. The Government points out the fact that the Court was well aware of Spencer's lies. Opposition at 12. Moreover, the Plea Agreement contained no provision regarding any potential reduction in his sentence for assistance to the Government, see Plea Agreement, although Mariano agreed to cooperate with the Government on matters related to his civil liabilities, see id. ¶ 1.c. ("Defendant agrees to cooperate with employees of the IRS, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of his civil liabilities."). The possibility of a reduction in sentencing was based on Mariano's continued acceptance of responsibility for his own actions, see id. ¶¶ 2.b., 2.c, not on his cooperation with the Government with respect to other defendants in the criminal case. Therefore, Mariano's suggestion that Attorney Calcagni should have argued mitigation on this basis is rejected.

Mariano's third argument in support of his claim that sentencing counsel was ineffective is that counsel failed to challenge the amount of loss claimed by the Government and to argue mitigation based on his "documented gambling addiction and depression." Mariano Mem. at 28. Regarding the amount of loss, Mariano overlooks the fact that in the Plea Agreement he stipulated

and agreed that "[t]he amount of loss attributable to the offense is more than $7,000,000 but less than $20,000,000." Plea Agreement ¶ 4.a. Moreover, at the change of plea hearing, the Court had addressed the parties' stipulations as to the facts, specifically referencing the amount of loss:

> Essentially, Mr. Mariano, you are admitting these facts today. It's important that you understand that because at the time of sentencing, if you are dissatisfied with my guideline calculation which will be based on some of these facts, you can't come back and say, well, it was less than $7 million or it was some other factor that you're admitting to today.

Plea Hrng. Tr. at 23. Asked again if he understood, Mariano responded affirmatively. Id.[11]

At the sentencing hearing, the Government, the Government stated that Mariano "now fully admits that the fraud cost the Navy nearly $18 million ...." Sent. Hrng. Tr. at 21. The Government's stated amount falls within the parameters listed in the Plea Agreement. There simply was nothing for counsel to challenge, given the agreed-upon facts in the Plea Agreement.

Mariano further claims that counsel "failed to present any mitigating evidence such as the counseling Petitioner had received over the years for a gambling addiction and depression." Mariano Mem. at 32-33; see also id. at 33 ("no inquiry was ever made into records relating to counseling received from Dr. Sullivan in Newport, RI when he sought counseling for gambling and depression related issues"). However, Mariano's own contemporaneous statements to the probation officer undermined any argument counsel could have made. According to the PSR:

> Mr. Mariano stated that while he enjoyed gambling and taking vacation trips with his friends to Las Vegas several times per year, he did not ever experience an addiction to gambling. He indicated that since he has been ordered to refrain from frequenting gambling establishments, he has not had any problem doing so. ...

---

[11] In his memorandum, however, Mariano states that he "continued to object to the monetary loss cited by the government ...." Mariano Mem. at 17, and chastises both Attorney Corrente and Attorney Calcagni for failing to dispute the amount of loss, id.; see also id. at 15 (alleging that sentencing counsel was ineffective for failing to challenge the "disputed monetary loss claimed by the government"), 28 (again alleging failure to "challenge the amount of loss claimed by the government").

PSR ¶ 54.

Regarding depression, Mariano points to the condition of his pre-trial release that he undergo counseling. Mariano Mem. at 33. The PSR reveals that Mariano has a past history of depression and is prescribed medication for depression and anxiety. PSR ¶ 52. He reported a bout of depression in 1994 and was first prescribed anti-depressant medication at that time. Id. Mariano experienced depression again in 2003 and 2004. Id. However, Mariano "advised that he [was] in good mental and emotional health, " id., and "d[id] not have any mental health issues," id. ¶ 54. His counselor did not find that Mariano had clinical psychological problems. Id. ¶ 53. Asked during the change of plea hearing if he had been treated recently for any mental illness or addiction to narcotic drugs, Mariano responded in the negative. Plea Hrng. Tr. at 5. As with the amount of loss, there is little "wiggle room" here for counsel to have argued mitigation on the basis of a gambling addiction and/or depression. Again, Mariano cannot claim that he was prejudiced by Attorney Calcagni's failure to argue mitigation based on gambling or depression.

Moreover, counsel did argue mitigation, both in the defense's sentencing memorandum and during the sentencing hearing, based on other factors. For example, counsel noted that Mariano was a first time offender, was a committed family man and the primary caregiver for his elderly parents, was a committed friend and mentor to others, and was a frequent contributor to various charities. Defendant's Sentencing Mem. at 9-10; see also Sent. Hrng. Tr. at 30. In addition, "[n]otwithstanding his recent actions," counsel stated, "Mr. Mariano completed twenty-nine (29) years of public service to the government," and made "many meaningful contributions and achievements" during this time. Defendant's Sentencing Mem. at 10; see also Sent. Tr. at 30. During the hearing, counsel observed that Mariano had complied with all terms of his pre-trial

release, including disassociating himself from his co-conspirators and attending court-ordered counseling.   Sent. Hrng. Tr. at 8, 10; see also Defendant's Sentencing Mem. at 4.   Counsel characterized the latter as "demonstrative of self-rehabilitation."   Sent. Hrng. Tr. at 10.

The Court considered counsel's mitigation arguments, but ultimately determined that the "devastation [Mariano] left in [his] wake," id. at 36, outweighed the factors cited by counsel.   The Court stated:

> Now, the Defendant has argued that his past good works, his need to assist his elderly parents all ought to be taken into account in this Court's determination of an appropriate sentence.
> Under ordinary circumstances, consideration is given when a Defendant points to the need to provide assistance to family members.  However, in this case, if all of the harm that has been addressed by Admiral Duryea to the Navy, by Mr. Vilker to the taxpayers and those former employees of naval contractors who lost their jobs as a result of Mr. Mariano's arrogance and avarice, if that weren't enough, his 82-year-old father is now a convicted felon because Mr. Mariano used him to run some of the checks through his account.
> So when you make a statement that you're deserving of leniency because you're a good son and because you've done good things in your life, Mr. Mariano, that rings hollow when I consider the devastation you left in your wake, not only to your own family, to your friends, to the taxpayers, the Navy and all of those people who lost their jobs who had to dip into their savings, who could not find another job that was as well paying, whose lives were absolutely devastated by you all because you wanted to be a big shot.

Sent. Hrng. Tr. at 35-36.   Based on the Court's statements, it appears highly unlikely that any mitigation arguments Mariano claims should have been raised would have affected its sentencing determination.

Mariano has not demonstrated that he was prejudiced by any of the alleged deficiencies on sentencing counsel's part.   Therefore, his claim that Attorney Calcagni provided ineffective assistance at sentencing is rejected.

## CONCLUSION

Mariano  has not demonstrated, by a preponderance of the evidence, that he received ineffective assistance of counsel at either the plea or sentencing stages of these proceedings.  See Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)(noting petitioner's "very heavy burden" to "demonstrate ineffective assistance by a preponderance of the evidence").  For the foregoing reasons, the Motion is DENIED and DISMISSED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts (§ 2255 Rules), this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA), because Mariano has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Mariano is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  See  § 2255 Rule 11(a).


SO  ORDERED:


/s/ Mary M. Lisi
Mary M. Lisi
Senior United States District Judge


Date: May 23, 2017